IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMANDA J. YOUNG,

        Plaintiff,        OPINION and ORDER

 v.

MONROE COUNTY,             23-cv-729-amb

        Defendant.

---

  Plaintiff Amanda Young, a former 911 dispatcher for defendant Monroe County, filed suit against her former employer, claiming that defendant unlawfully discriminated, interfered, and retaliated against her on the basis that she has a disabled son. I dismissed plaintiff's discrimination and interference claims on summary judgment and allowed her to proceed to trial on a retaliation claim under the Family Medical Leave Act (FMLA). The jury heard evidence over two days and rendered a special verdict. The jury found plaintiff had proven that her use of FMLA leave was a motivating factor in defendant's decisions to not re-hire her as a full-time dispatcher and to terminate her employment as an on-call dispatcher.[1] Dkt. 66. But the jury also found that defendant had proven that it would have taken the same employment actions even if plaintiff had not used FMLA leave. *Id.* Based on this verdict, the court entered judgment in favor of defendant. Dkt. 76.

---

[1] The parties consented to magistrate judge jurisdiction in June 2024. Dkt. 10.

Plaintiff now moves for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and, alternatively, for a new trial under Rule 59. Dkt. 78. For the following reasons, the motion is DENIED.[2]

ANALYSIS

The parties dispute whether the evidence admitted at trial supports the jury verdict and whether a new trial is necessary. Before resolving these disputes, I will make an observation about the trial record: All of the trial exhibits are recorded, *see* Dkt. 49, and there is one deposition transcript that was read and filed, Dkt. 58 & Dkt. 60, but neither party ordered trial transcripts, so there are none to reference or cite. That said, the parties' recitations of the evidence are largely in sync and there appear to be no material disputes about what was adduced and admitted at trial. In particular, plaintiff was afforded a reply brief, but did not submit one, so defendant's summary of the evidence is uncontested. *See* Dkt. 80. The court has taken the parties' lead and has referenced the exhibits, the one deposition transcript, and the parties' briefing in ruling on this motion.

**A. Plaintiff's motion for judgment as a matter of law under Rule 50(b)**

Plaintiff asks for judgment as a matter of law under Rule 50(b), arguing that the jury heard insufficient evidence to find that defendant would have taken the same adverse employment actions even if she had not used FMLA leave. "A court may enter judgment as a matter of law under Federal Rule of Civil Procedure 50(b) if a party has been 'fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Sun v. Xu*, 99 F.4th 1007,

---

[2] Defendant's pending Bill of Costs will be addressed in a separate order. Dkt. 77.

1012–13 (7th Cir. 2024) (quoting Fed. R. Civ. P. 50(b)). In deciding plaintiff's motion, the court must view the evidence presented in the light most favorable to defendant as the nonmoving party. *Haley v. Gross*, 86 F.3d 630, 632 (7th Cir. 1996).

Plaintiff contends that her former supervisor Michael Thompson believed that she abused FMLA and this belief motivated him when he declined to rehire plaintiff as a full-time dispatcher or to retain her as an on-call dispatcher in March 2022. Thompson noted in his email to plaintiff announcing the decisions that, while he thought plaintiff was a "wonderful person," he "had serious doubts about [her] reliability and dependability." Ex. 515 & Dkt. 23–22 at 2. He explained that plaintiff had been "absent so many times [over the previous two years] that" she missed the equivalent of six months of work and that it had been "mostly miss" since she returned to on-call status. *Id.*

The jury heard Thompson testify[3] that plaintiff's absences in 2022 had created a situation that was "absolutely stupid" and that "[a]nybody that has a work ethic would know they should have been fired a long time ago instead of being an empty chair." Ex. 538 & Dkt. 58 at 51:15–17. He stated that he did not "care if it's FMLA or just regular sick time. If you take so much time off, time off is time off," and while FMLA is "protected," over a third of Young's absences "were uncovered days. No requested absence. Nothing." *Id.* at 29:17–25. He remarked that he had heard Young "was doing the same thing" at another job that "she had been doing to us with not showing up, trying to get FMLA. But FMLA doesn't work until after a year, so…" *Id.* at 61:3–6. He also stated that he "could have fired [plaintiff] time and

---

[3] Thompson was unavailable to testify at trial, so the jury heard his deposition testimony, which was read in and filed on the docket. Dkt. 20, Dkt. 58 & Dkt. 60.

time again, and nobody would have said the difference," and that if people were "going to abuse [FMLA], it's going to be a mechanism for recordkeeping." *Id.* at 52:14–18.

This evidence supports the jury's finding that plaintiff's use of FMLA leave was a motivating factor in defendant's decisions, but it does not negate other evidence supporting the jury's additional finding that defendant would have taken the same adverse employment actions regardless of plaintiff's use of FMLA leave. In particular, the jury heard that plaintiff had voluntarily quit her full-time position in December 2021 and failed to provide the requisite three weeks' notice. The jury also heard that plaintiff, after returning to on-call status, signed up to work eleven shifts in January and February 2022, but worked only one, and then left after working only 1.25 hours to help with a family business. This was when the dispatch center was under stress from a higher-than-normal volume of calls.

The jury heard that plaintiff's absences and late shift swaps caused hardship on her coworkers and the call center. Thompson explained in his termination email to plaintiff that "[w]hat really made [his] decision" was one such shift-swapping incident when plaintiff agreed to cover a co-worker's shift but then asked another co-worker to work those hours on short notice, causing that co-worker to work a 16-hour day. Ex. 515 & Dkt. 23–22 at 2. In the employee work plan Thompson was developing for plaintiff before her termination, he emphasized her "significant" absences and parsed out her 635 hours of non-FMLA leave over two years. Ex. 520 & Dkt. 23–27. The jury was able to review this draft plan along with Thompson's termination email, plaintiff's time record, Ex. 501 & Dkt. 23–8, her list of hours, Ex. 524, the dispatch center schedule for January 2022, Ex. 509 & Dkt. 23–12, and a co-worker's 2021 complaint about plaintiff frequently calling out, Ex. 522 & Dkt. 17–2.

4

The jury also heard testimony from Human Resource Director Ed Smudde, who noted that plaintiff was ineligible for rehire as a full-time dispatcher after giving defendant insufficient notice of her resignation from her full-time position. *Cf. Guzman v. Brown Cnty.*, 884 F.3d 633, 640–41 (7th Cir. 2018) (no claim for FMLA retaliation where employee was disciplined for policy violations). He also noted that plaintiff was not entitled to FMLA leave after resigning from her full-time position and returning to on-call, part-time status. This testimony, along with the additional evidence the jury considered, sufficiently supported the jury's finding that defendant would have declined to rehire plaintiff as a full-time dispatcher and would have terminated her as an on-call dispatcher regardless of her past use of FMLA leave.

**B. Plaintiff's motion for a new trial under Rule 59**

Plaintiff alternatively seeks a new trial under Rule 59, arguing that the jury's verdict was against the weight of the evidence and that the court failed to give the Seventh Circuit's mixed-motive instruction. Federal Rule of Civil Procedure 59(a) gives a district court the authority to grant a party's motion for a new trial. "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). As explained above, there was sufficient evidence to support the jury's verdict, and it was not against the manifest weight of the evidence for those same reasons.

Plaintiff's request for a new trial thus hinges on her argument that the jury instructions were unfair. "District courts have substantial discretion in how to precisely word jury instructions, provided that the final result, read as a whole, is a complete and correct statement of the law." *Ernst v. City of Chicago*, 837 F.3d 788, 794 (7th Cir. 2016) (citing *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 433 (7th Cir. 2009)). "[T]o win a new trial based on an

5

incorrect jury instruction, [plaintiff] must show both that (1) the instruction inadequately states Seventh Circuit law; and (2) the error likely confused or misled the jury causing prejudice to [plaintiff]." *O'Donnell v. Caine Weiner Co., LLC*, 935 F.3d 549, 552 (quoting *Gile v. United Airlines, Inc.*, 213 F.3d 365, 374–75 (7th Cir. 2000)).

At trial, the court gave Seventh Circuit Civil Jury Instruction 10.1, Nature of FMLA Claim, and Instruction 10.4, Elements of FMLA Retaliation Claim—instructions plaintiff requested. Dkt. 70 at 3-4; *see* Dkt. 44 at 1. Plaintiff now argues that the court should have given the Seventh Circuit's mixed-motive instruction because it was supported by the evidence and would have allowed her to recover her costs and attorneys' fees.[4] Instruction 10.4, as given by the court, and the mixed-motive instruction have significant overlap:

| **The FMLA retaliation instruction given by the court, Dkt. 70 at 3–4:** | **The mixed-motive instruction:** |
|---|---|
| To succeed, plaintiff must prove, by a preponderance of the evidence, that her use of FMLA leave was a motivating factor in defendant's decision to not re-hire her into a full-time position or to terminate her employment as an on-call dispatcher. The term "motivating factor" means a reason why defendant took the action that it did. It does not have to be the only reason.<br><br>If you find that plaintiff's use of FMLA leave motivated defendant either to not re-hire her as a full-time dispatcher or to terminate her employment as an on-call dispatcher, you must find for plaintiff unless you decide that defendant has proven by a preponderance of the evidence that it would have declined to re-hire plaintiff full-time or terminated her | Plaintiff must prove by a preponderance of the evidence that his [protected class] was a motivating factor in Defendant's decision to [adverse employment action] him. A motivating factor is something that contributed to Defendant's decision.<br><br>If you find that Plaintiff has proved that his [protected class] contributed to Defendant's decision to [adverse employment action] him, you must then decide whether Defendant proved by a preponderance of the evidence that it would have [adverse employment action] him even if Plaintiff was not [protected class]. If so, you must enter a verdict for the Plaintiff but you may not award him damages. |

---

[4] *See* Committee Comment c to Seventh Circuit Civil Jury Instruction 3.01, General Employment Discrimination Instructions. The court bifurcated trial, so the case did not proceed to the question of damages in light of the verdict.

6

| | |
|---|---|
| employment as an on-call dispatcher even if she had not used FLMA leave.<br><br>If you find that defendant has proven that, then you must find for defendant.  If you find that defendant has not proven that, then you must find for plaintiff | |

The difference pertinent to the inquiry here is in the final sentences.  Instruction 10.4 directs the jury to find for the defendant when it proves by a preponderance of the evidence that it would have taken the same adverse employment action regardless of any motivating factor.  In contrast, the mixed motive instruction directs the jury to enter a verdict for the plaintiff in such a case, but not to award damages.  Plaintiff states that the mixed motive instruction would have allowed the jury "an opportunity to establish limited liability against the County" because the jury found that her use of FMLA leave was a motivating factor. Dkt. 79 at 7.

There are two fundamental problems with plaintiff's position.  First, the argument is waived because plaintiff did not request the mixed motive instruction, *see* Dkt. 44, or similar language.  *See Jabat, Inc. v. Smith*, 201 F.3d 852, 857 (7th Cir. 2000) ("When parties do not object to jury instructions, these instructions generally become the law of the case.  Once the law of the case is settled, the parties can only argue that the jury did not properly apply the instructions to the facts."); *see also MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 658 (7th Cir. 2011) ("Midwest suggests that the district court erred in failing to provide a usury instruction.  But it did not request such an instruction and has waived any argument that related to such an instruction."); *cf. Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 125 F.3d 468, 477–78 (7th Cir. 1997) (a party who fails to alert the judge to objections to special verdict questions has waived such objections).

Plaintiff points to Rule 51(d), which allows a court to consider a plain error in the jury instructions even if the party did not object. *See Mesman v. Crane Pro Servs.*, 512 F.3d 352, 357 (7th Cir. 2008) (recognizing that a plain error in civil jury instructions is now a basis for reversal under Rule 51(d)(2)). Application of Rule 51(d)(2) requires that "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings." Fed. R. Civ. P. 51, 2003 note, citing *Johnson v. United States*, 520 U.S. 461, 466–67, 469–70 (1997). "'Plain' is synonymous with 'clear' or, equivalently, 'obvious'," and a plain error affected substantial rights when it "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).

Plaintiff does not explain how the instruction given was clearly erroneous, and the court does not see any plain error. The court presented the approved, plain-language standard instructions for FMLA retaliation claims, as requested by plaintiff, and gave the parties opportunity to review and object to these instructions before and during trial. As shown above, the instruction the court gave and the one now requested by plaintiff are substantively similar. They both properly instruct the jury on the law regarding motivating factor and other reasons for taking adverse employment actions. They both properly assign the burdens of proof. The one difference is the final part on whether the jury should enter a verdict and award damages, but this difference would not have affected the jury's findings on the substance of plaintiff's claims. This is particularly true in light of the special interrogatories the court posed that directedly asked the jury to make findings as to motivating factor and other reasons for taking adverse employment actions. Dkt. 66.

This leads us to the second problem with plaintiff's argument. Even had she received the instruction she now proposes and got the affirmative verdict contemplated, the court could not award the equitable relief she seeks. Plaintiff argues that she could have sought costs and attorney fees had the jury entered a partial verdict in her favor. But the FMLA "provides no relief unless the plaintiff can prove that [she] was prejudiced by the violation," *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008), and the jury here found that defendant would have terminated or declined to re-hire plaintiff irrespective of her use of FMLA leave. Moreover, under the FMLA, "[a]n interlocutory jury verdict on the issue of liability alone . . . is insufficient to constitute a judgment awarded to the plaintiff." *Id.* at 431.

Although the court cited *Franzen* to the parties previously, Dkt. 75 at 1, plaintiff does not address it in her motion, and the cases she relies on do not address jury instructions or otherwise speak to the question at hand. In *Goelzer v. Sheboygan County*, 604 F.3d 987 (7th Cir. 2010), the Court of Appeals reversed summary judgment against a plaintiff alleging FMLA interference and retaliation. *Id.* at 989. The court distinguished retaliation and interference theories and the direct and indirect methods of proof, then explained why there was enough record evidence to support a jury finding that plaintiff was fired because she had used FMLA leave. *Id.* at 995–96. In *Lewis v. School District No. 70*, 523 F.3d 730 (7th Cir. 2008), the Court of Appeals similarly explained that a plaintiff alleging FMLA retaliation could defeat summary judgment via direct or circumstantial evidence or by establishing that she was treated less favorably than similarly situated employees who had not used FMLA leave. *Id.* at 741. The Court also explained the concept of a motivating factor, and why a reasonable jury could conclude that the defendant's actions at the time of plaintiff's dismissal could provide proof of retaliatory motive. *Id.* at 742–43.

9

These cases stand for the general proposition that a plaintiff may pursue a mixed motive theory, but they do not speak to whether the jury instructions were prejudicial to plaintiff in this case. The court must deny her motion.

ORDER

IT IS ORDERED that plaintiff Amanda J. Young's motion for a new trial, Dkt. 78, is DENIED.

Entered December 8, 2025.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge